**In re the Matter of Marsha E. HAYDEN.**[1]

v.

**Wayne S. RITTER.**

File No. CS03–07276.
Petition No. 04–22620.

Family Court of Delaware, Sussex County.

Submitted: Dec. 9, 2005.
Decided: June 14, 2006.

William B. Wilgus of The Law Office of William B. Wilgus, Georgetown, DE, for Petitioner Marsha E. Hayden.

1. Pseudonyms have been used to protect the identity of the litigants.

Theresa M. Hayes of The Law Offices of Ed Gill, Georgetown, DE, for Respondent Wayne S. Ritter.

HENRIKSEN, Judge.

This is the Court's Decision and Order on issues of property division, costs and attorney's fees concerning the 18–1/2 year marriage of Marsha Hayden (wife) and Wayne Ritter (husband). Two children were born of the marriage who are now ages 20 and 17. In addition to the testimony of each of the parties, the Court heard the testimony of George A. Harrison, a marine surveyor, and Bob Ritter, Jr., the parties' 20 year old son.

The parties married April 6, 1986, separated May 10, 2004, and divorced December 8, 2004. Both parties are in good health. Wife is 48 years of age, having been born June 24, 1957. Husband is 46 years of age, having been born October 25, 1959. For the past 2–1/2 years, wife has been working as a mapping technician for Sussex County, earning an annual income of $27,369. For the past 8 years, husband has been working as a superintendent for a contract company. His job requires considerable travel. His annual income, including an annual bonus, is $90,163.74. Husband is also reimbursed for his travel expenses through a per diem expense account.

Both parties were married previously, and both parties obtained a high school education. Husband had no children by his prior marriage. Wife had a daughter by her prior marriage, who lived with the parties for approximately 10 years during her minority. During that time, wife received child support from the child's father.

Wife seeks a disproportionate division of marital property favoring wife in a ratio of 75%/25%. Husband seeks an equal division of property. However, at trial, husband clarified his earlier position by noting that it excluded certain items wife had already received. By including items wife had already received, and also considering husband's greater contribution to the marriage by way of a sizable personal injury award he received and put into the joint assets of the parties, husband seeks a disproportionate division of marital property which favors wife in a ratio of 60/40.

At the conclusion of the hearing, the Court left open the record so wife could provide copies of her bank statements for an account held in her name alone for the months of May 2004 through and including September 2004. This information was to be obtained by wife and provided to husband's counsel, with copies to the Court, at the earliest possible date. These account statements were necessary because wife indicated in her testimony that many of the monies she received from husband had been placed partially in a joint account held by the parties, and partially in her individual account. Wife then indicated that she paid certain of the parties' marital expenses out of both of these accounts. Unfortunately, the Court was not provided with any proof or record of what had been paid from wife's individual account. The Court also required that each of the parties provide memorandums to the Court which would comment specifically on the attorney's observations made from a review of wife's individually held account, as well as the information already in evidence as an exhibit regarding the jointly-held bank account statements. It was the Court's hope that this would assist the Court in forming an opinion on the general allegations made by husband that wife had spent funds inappropriately, and also assist the Court in looking at husband's accusation that wife had a reckless habit of spending money on herself, calling wife the "QVC Shopping Network Queen". The

memorandums also contained each of the parties' closing arguments summarizing the evidence presented and the basis for the outcome that each side desires.

At the close of the hearing, the Court announced certain findings of fact which were clear from the evidence presented. Thus, all parties agreed that the White Horse Beach residence would be awarded to husband with an agreed-upon value of $74,000.

■ The 29 foot Rampage boat would be listed for sale. Husband needs to make immediate efforts to ready the boat for sale by re-installing the engine he had taken out for repair. The marine surveyor testified that with the engine in the boat, the boat would have a value of $37,000, which was below the average value of $41,500. Having reviewed the marine surveyor's report, having heard his testimony, and noting that the difference between what the surveyor would propose as the fair market value of the boat ($37,000) and what a boat of this age and type should value at ($41,500), the Court does not find the lesser value to be significant enough to make a finding that husband had dissipated the asset. The attorneys, with the assistance of the parties, shall agree upon an appropriate method to sell boat. Upon sale of the boat and the deduction of any necessary expenses of sale, the parties shall divide the net proceeds with 65% to wife and 35% to husband.

The Court also made a finding that wife would be awarded 78 Longaberger baskets at an average value of $50 each, for a total assigned value of $3,900. The Court understands that wife has already sold 26 of these baskets, for which she received $1,300. Wife has 52 more baskets. Out of these baskets, however, husband shall be entitled to pay wife $50 for the one basket which is autographed by Dave Longaberger. Wife shall deliver this particular basket to her attorney within 10 days of the mailing date of this Order, and husband shall have 10 days thereafter in which to advance the sum of $50 for the basket if he wishes to purchase the basket. Otherwise, husband shall forfeit his opportunity to buy this basket.

Having heard the testimony of each of the parties, as well as their 20 year old son, Wayne, the Court was of the opinion that the P.A. system was given to the parties' son. Wife shall turn the P.A. system over to their son within 10 days of the mailing date of this Order. In making this decision, the Court had to judge the credibility of the testimony of each of the parties and Wayne. The Court did not always find wife's testimony credible. It was difficult for the Court to believe that wife had no concept of how many pieces of jewelry she sold. Wife repeatedly answered that she sold her jewelry in bulk for the gold. The Court also had difficulty in believing wife's testimony that she had nothing to do with having the parties' joint income tax check mailed to the address of wife's then boyfriend and now husband.

■ The Court awarded the 1997 Ford Explorer to wife with an assigned value of $5,850. The Court finds that the 1996 Chrysler Sebring was intended as a gift by the parties to their daughter. Husband eventually took the vehicle away from their daughter because he was not happy with her use of the vehicle. The $1,000 he received when he traded the vehicle in for the vehicle husband now drives is the property of the daughter. Husband owes his daughter the sum of $1,000.

The parties agreed that the band trailer was wife's, with a value of $2,000. The parties also agreed that the camper was husband's, with a value of $2,000.

Husband is awarded the value of $1,500 which he received for the sale of his guns.

The parties also disagreed about whether they had divided their personal property. The parties shall divide their remaining personal property by the two list method. The list shall not include the Longaberger baskets or jewelry which wife previously sold. Wife shall be responsible for preparing the lists and presenting them to husband through the parties' attorneys within 15 days of the mailing date of this Order, and husband shall have 15 days thereafter to select the list he desires. The parties shall then exchange the property within 15 days after husband's selection.

The parties also agreed that their respective pensions would be divided by the entry of Qualified Domestic Relations Orders/Allocation Orders awarding each party their share in the other's pension based upon a Cooper formula with a 50% multiplier paid to each of the parties if, as and when the other party receives their payments.

The debt picture of the parties was less clear than the valuation of many of the assets. In some cases, one party sought credit for the balance owed as of the date of separation. It was the Court's hope that a review of the bank accounts would show that some of these debts were paid off or reduced during separation with monies placed into the joint account by husband or provided to wife by husband, and then paid out of either the joint account or wife's individually held account. As to some of the other payments made on which the parties seek credits, especially for payment of utilities, the Court was looking for clarification for each of these bills to show a properly prorated amount of the bill paid by one party that benefited the other during separation, as opposed to payment of the bill by one party which may have covered time periods when the parties were still together. The Court understands that the critical time was between May 10, 2004 and August 31, 2004 when wife occupied the marital residence, after which time wife vacated the premises and husband moved into the premises. The Court was clear, however, that husband is responsible for payment of the debt to Green Tree with a balance at separation of $12,783.43. Husband is also assigned responsibility for the Pennsylvania Department of Revenue debt for past taxes incurred during the marriage in the amount of $32,653.54 owed as of November 5, 2005. Husband also receives a credit for payments he made since January 1, 2005, against this outstanding balance in the amount of $3,250. Husband also is responsible for a family accountant bill to Sniegocki & Associates in the amount of $1,055. These are for past due accounting bills for preparation of taxes during the years of 2000, 2001, and 2002. Although wife claims that both the Pennsylvania Department of Revenue Tax and the accounting bills should be husband's sole responsibility because he did not deduct appropriate sums from his business account, the parties were clearly married at the time and both parties clearly benefited from income from husband's body shop business. These are clearly marital obligations.

The Court needed and received further clarification from the parties before determining the exact balances which would be attributed to the Delaware Federal Credit Union debt, Citibank debt on the trailer, George Sullenberger (wife's previous husband) on the P.A. system, and the Wilmington Trust Company account debt against the Ford Explorer. The Court also needed and received better information on the credits or debt responsibility husband was seeking on the White House Beach lot rent, Capital One bank card, First Premier Bank, Long Neck Storage,

Delaware Electric Co-op, Bob Willey & Sons, Long Neck Water, Sussex Utility, Sussex County Treasury Division for taxes, Mediacom, and MCI.

The Court disallowed any credit wife sought to Sears because it was paid by her in June 2004 out of the parties' joint bank account.

Wife seeks reimbursement of $300 she paid for the appraisal by Kurt Brown on the White Horse Beach residence, together with $200 for Mr. Brown's Court appearance. Wife also seeks reimbursement of $442.50 for the marine survey on the boat, as well as $300 for the marine surveyor's testimony.

The 2003 District of Columbia income tax refund went to wife at her new address in the amount of $2,752 and wife deposited it into her individual account. Likewise, wife also received the 2003 income tax refund from North Carolina in the amount of $302.11 and deposited it into her own account.

Wife had a diamond ring which wife indicated she acquired prior to the marriage valued at $2,800. She traded that ring for a larger ring which she paid an additional $3,000 during the marriage. She traded yet again for another $2,000, for a total trade-up cost during the marriage of $5,000. Wife testified that she sold the ring to a jeweler in Baltimore and said she received $5,000 for it. This ring was used as collateral of a loan, where the ring was listed with a value of $20,000 and a willing buyer at the time for $10,000. The Court will assign wife the value of the ring at $5,000.

Wife received $3,200 for jewelry that she sold in bulk weight.

■ In 1994–95, husband received $230,000 net proceeds from an accident which occurred in 1990 where he lost several of his fingers. According to husband, $40,000 was invested into the parties' home, $55,000 was used to acquire the boat in husband's name alone, and $100,000 was invested in husband's body shop. Husband acknowledged that both of them went on a shopping spree and spent the rest of the money. When husband received the check, it was deposited into the joint account, which therefore made it marital property. However, husband's contribution is to be recognized.

The parties had a homemade boat trailer which fell apart and the Court assigns no value to the trailer.

■ The Court has now had the opportunity to consider all of the factors set forth in 13 Del.Code § 1513 in light of the information received at trial, as well as the subsequent information and memorandums supplied by the parties. This is a marriage of 18–1/2 years, where husband's present and future income potential far exceeds wife's. Were the Court to consider the income disparity alone, the Court would most likely make an award of 65/35% favoring wife. However, the Court is mindful of the sizable contribution husband made into the marriage from his personal injury award for the loss of his fingers. As such, the Court will adjust its final distribution to a 60/40% distribution favoring wife. This will not affect the previous agreement of the parties to divide the proceeds from the sale of the boat on a 65/35% split, nor will it change the necessity for the parties to divide their remaining personal property by the two list method as set forth earlier in this decision. Also, as agreed, the parties will divide their respective pensions by the entry of Qualified Domestic Relations Orders/Allocation Orders, awarding each party their share in the other's pension based upon the Cooper Formula with a 50% multiplier paid to each of the parties if, as, and when the other party receives their payments.

The Court assigns husband assets totaling $77,550. These assets are comprised of the following:

| ASSET | ASSIGNED VALUE |
|---|---|
| White House Beach real estate | $74,000 |
| Guns | $ 1,500 |
| Camper | $ 2,000 |
| Dave Longaberger signed basket | $   50 |
| Total | $77,550 |

Husband is assigned, or credited with payments of debts, totaling $60,810.54. Those debts and amounts are comprised of the following:

| DEBT | ASSIGNED DEBT/PAYMENT CREDIT |
|---|---|
| Pennsylvania taxes due as of hearing | $32,635.54 |
| Pennsylvania taxes paid by husband in 2005 prior to hearing | $ 3,250.00 |
| Green Tree Finance (mortgage) | $12,783.43 |
| White House Lot Rent | $ 8,971.61 |
| Capital One | $ 1,235.61 |
| Sniegocki & Associates (accounting services) | $ 1,055.00 |
| First Premier Bank | $   241.70 |
| Long Neck Storage | $   234.00 |
| Sussex County Treasury Division | $   403.65 |
| Total | $60,810.54 |

This leaves husband net equity in the marital property of $16,739.46.

Wife is awarded assets totaling $34,675.61. Those assets are comprised of the following:

| ASSET | ASSIGNED VALUE |
|---|---|
| Band trailer | $ 2,000.00 |
| 1997 Ford Explorer | $ 5,850.00 |
| Monies unilaterally appropriated by wife from parties' joint account following separation to August 2004 | $11,671.50 |
| Jewelry sold | $ 3,200.00 |
| Diamond ring sold | $ 5,000.00 |
| Longaberger baskets sold | $ 3,900.00 |
| North Carolina tax refund | $   302.11 |
| District of Columbia tax refund | $ 2,752.00 |
| TOTAL | $34,675.61 |

Wife is hereby assigned the following debts totaling $17,853.24.

| DEBT | ASSIGNED DEBT |
|---|---|
| Delaware Federal Credit Union | $10,630.00 |
| Wilmington Trust Company-(Explorer loan) | $ 2,500.00 |
| CitiFinancial (band trailer loan) | $ 2,223.24 |
| George Sullenberger (PA system) | $ 2,500.00 |
| TOTAL | $17,853.24 |

Wife's net marital estate is therefore $16,822.37.

The total net equity of the marital estate, not counting the boat and pensions, therefore equals $33,561.83. Sixty percent of the net marital estate, or the amount to which wife is entitled, is $20,137.10. Since wife already has $16,821.37 of this amount, husband must pay wife the sum of $3,315.73.

In addition, wife is seeking reimbursement for all or part of her expert witness fees. She paid a total of $500 for the real estate appraiser and $742.50 for the marine surveyor report and testimony. Wife therefore paid $1,242.50 in expert witness fees. Sixty percent of that amount, which the Court will require husband to reimburse wife for, is $745.50. When adding this reimbursement to the amount husband needs to pay wife to achieve an equitable distribution of property, husband must pay wife $4,061.23.

This amount needs to be adjusted for credits husband is seeking whereby he made payments on behalf of wife following

their separation and for which wife solely benefited. These payments made by husband on wife's behalf total $1,665.46, and are comprised of the following:

| PAYMENT TO | PAYMENT AMOUNT |
|---|---|
| Green Tree | $ 630.20 |
| Delaware Electric Co-op | $ 390.19 |
| Bob Willey | $ 80.05 |
| Sussex Utility Division | $ 109.24 |
| Long Neck Water Company | $ 138.00 |
| MCI | $ 254.08 |
| MCI | $ 63.70 |
| | |
| Total | $1,665.46 |

With this final adjustment, husband needs to pay wife the sum of $2,395.77 in order to arrive at an equitable distribution of property, along with allowances for wife's expenditures for expert witnesses and credits sought by husband. In the event the boat has not yet been sold, this amount may await husband's payment to wife when he receives his 35% share of the net proceeds from the sale of the boat. If the boat has been sold and the proceeds already distributed, husband shall make this payment to wife within 90 days of the mailing date of this Order.

IT IS SO ORDERED.